IN THE UNITED STATES DISTRICT COURT FOR THE
MIDDLE DISTRICT OF TENNESSEE
NASHVILLE DIVISION

MOMS FOR LIBERTY – WILSON )
COUNTY, TN, et al., )
       )      NO. 3:23-cv-00211
       Plaintiffs, )
       )      JUDGE RICHARDSON
v. )
       )
WILSON COUNTY BOARD OF )
EDUCATION, et al., )
       )
       Defendants. )

## MEMORANDUM OPINION AND ORDER

Pending before the Court is Plaintiffs' motion for preliminary injunction (Doc. No. 16, "Motion"). Plaintiffs filed a memorandum in support of the preliminary injunction (Doc. No. 17). Defendants filed a response (Doc. No. 21), to which Plaintiffs filed a reply (Doc. No. 22). Defendants then filed a supplemental response (Doc. No. 26) to which Plaintiffs filed a supplemental reply (Doc. No. 27).

## BACKGROUND[1]

Plaintiff Moms for Liberty – Wilson County, TN ("Moms for Liberty") is the Wilson County Chapter of Moms for Liberty, a 501(c)(4) organization whose mission is to organize, educate, and empower parents to defend their parental rights at all levels of government. (Doc. No.

---

[1] The following facts, unless somehow qualified herein, are taken as true for purposes of the Motion because they are either: (1) asserted and evidentially supported at least to some degree by one party and not rebutted by the other side; (2) otherwise not in genuine dispute; (3) asserted and evidentially supported by one side to such an extent, or in such a manner, that they are credited by this Court even if rebutted to some extent by the other side; or (4) subject to judicial notice. Because there are no facts in dispute that are material to the preliminary injunction sought, the Court may and will decide this Motion without an evidentiary hearing. *Certified Restoration Dry Cleaning Network, L.L.C. v. Tenke Corp.*, 511 F.3d 535, 553 (6th Cir. 2007) ("[W]here material facts are not in dispute or where facts in dispute are not material to the preliminary injunction sought, district courts generally need not hold an evidentiary hearing.").

1 at ¶ 3). Defendant Wilson County Board of Education ("Board") is a local government unit created by the State of Tennessee charged with administering the public schools in Wilson County, Tennessee. (*Id*. at ¶ 6). Defendant Kimberly McGee ("McGee") is being sued in her official capacity as Vice-Chairman of the Board. (*Id*. at ¶ 8). Each of the other named defendants is sued in his or her official capacity as a Board member, and one of them is sued also in her individual capacity.[2] (*Id*. at ¶¶ 7, 9-13).

The Board holds meetings that are open to the public. (*Id*. at ¶ 15). Rules about citizen participation in meetings are detailed in Wilson County Schools Policy Manual 1.404 ("Policy 1.404"), which provides three ways citizens can speak at the board meetings. (*Id*. at ¶ 16). First, an individual can ask for time on the meeting agenda 10 days before the meeting. (*Id*. at ¶ 17). Second, individuals can speak about items on the agenda. (*Id*. at ¶ 18). Third, an individual can ask any board member for permission to speak about an issue not on the agenda. (*Id*. at ¶ 19). As to the third method, a board member can grant an individual's request to speak about an issue not on the agenda only if he or she determines that doing so is "in the public interest." (*Id*.). Regardless of which method is used, Policy 1.404 prescribes the rule ("address-disclosure requirement") that any speaking individual must publicly announce his or her address before speaking.[3] (*Id*. at 21).

At the beginning of every meeting, the Chairman also informs speakers of additional rules, i.e., rules not found in Policy 1.404. (*Id*. at 20). In addition to verbally (orally) prohibiting

---

[2] The Court uses the collective term "Defendants" to refer to the Board, McGee, and all remaining defendants (namely Jamie Farough, individually and in her official capacity as a member of the Board; Melissa Lynn, in her official capacity as a member of the Board; Beth Meyers, in her official capacity as a member of the Board; Joseph Padilla, in his official capacity as a member of the Board; Carrie Pfeiffer, in her official capacity as a member of the Board; and, Larry Tomlinson, in his official capacity as a member of the Board).

[3] As discussed below, Policy 1.404 has since been modified to exclude a requirement that any speaking individual publicly announce their address before speaking.

"disruptive" behavior, the Board has a verbal rule ("abusive-comment prohibition") that forbids comments that are "abusive to an individual board member, the board as a whole, or the director of schools or any employee of the school system."[4] (*Id*. at ¶ 24).

Plaintiff Amanda Dunagan-Price ("Dunagan-Price") resides in Wilson County, Tennessee. (*Id*. at ¶ 5). She is the Chair of Moms for Liberty and the mother of several school-aged children who currently attend schools operated by Wilson County Schools. (*Id*.). Dunagan-Price felt dissuaded from speaking by the abusive-comment prohibition and the rule requiring her to disclose her address. (*Id*. at ¶¶ 36-37). Plaintiff Robin Lemons ("Lemons"),[5] the Secretary of Moms for Liberty, also resides in Wilson County, Tennessee and has a school-aged child who previously attended an elementary school operated by Wilson County Schools. (*Id*. at ¶ 4). She attempted to speak at a Wilson County school board meeting to "complain that school officials ignored and mishandled an allegation of sexual misconduct involving her fourth-grade daughter." (*Id*. at 2). Lemons crafted her planned remarks in light of the abusive-comment prohibition but was prevented from speaking on the grounds that she did not give her address. (*Id*. at ¶¶ 48-52). Lemons continues to be dissuaded from speaking by the address-disclosure requirement and the abusive-comment prohibition. (*Id*. at ¶¶ 54-55).

Other members of Moms for Liberty are also dissuaded by the address-disclosure requirement and the abusive-comment prohibition. (*Id*. at ¶ 57). In their Motion, Plaintiffs request an order prohibiting Defendants "from enforcing the Board's policies (1) requiring [per the address-disclosure requirement] that individuals speaking at Board meetings disclose their address, (2) prohibiting [per the abusive-comment prohibition] speakers from making allegedly

---

[4] As discussed below, the Board has since removed from its script all language stating that "disruptive" or "abusive" comments are prohibited.

[5] Moms for Liberty, Dunagan-Price, and Lemons are referred to collectively herein as "Plaintiffs."

'abusive' comments, and (3) requiring that individuals prove that their comments are 'in the public interest' before speaking." (Doc. No. 17 at 29).

## LEGAL STANDARD

"A preliminary injunction is an extraordinary remedy which should be granted only if the movant carries his or her burden of proving that the circumstances clearly demand it." *Overstreet v. Lexington-Fayette Urb. Cnty. Gov't*, 305 F.3d 566, 573 (6th Cir. 2003). "The party seeking a preliminary injunction bears a burden of justifying such relief, including showing irreparable harm and likelihood of success." *Kentucky v. U.S. ex rel. Hagel*, 759 F.3d 588, 600 (6th Cir. 2014) (quoting *Michigan Cath. Conf. & Cath. Fam. Servs. v. Burwell*, 755 F.3d 372, 382 (6th Cir. 2014)).

Those seeking a preliminary injunction must meet four requirements.[6] They must show a likelihood of success on the merits; irreparable harm in the absence of the injunction; that the balance of equities favors them; and that public interest favors an injunction. *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008); *Sisters for Life, Inc. v. Louisville-Jefferson County*, 56 F.4th 400, 403 (6th Cir. 2022).

A plaintiff seeking a preliminary injunction may not merely rely on unsupported allegations, but rather must come forward with more than "scant evidence" to substantiate their allegations. *See, e.g.*, *Libertarian Party of Ohio v. Husted*, 751 F.3d 403, 417 (6th Cir. 2014); *Cameron v. Bouchard*, 815 F. App'x 978, 986 (6th Cir. 2020) (vacating preliminary injunction when plaintiffs made no evidentiary showing on some elements of their claim, but instead made

---

[6] Some published Sixth Circuit cases stand unmistakably for the proposition that these four items are *factors* rather than *requirements,* except that irreparable harm is a requirement (and, if it exists and thus keeps the possibility of a preliminary injunction alive, thereafter becomes a factor to be balanced along with the other three factors). *See, e.g.*, *D.T. v. Sumner Cnty. Sch.*, 942 F.3d 324, 326–27 (6th Cir. 2019). Alas, this case law is inconsistent with more recent Sixth Circuit case law and with Supreme Court case law (including the two cases cited above) describing these as all being requirements. The Court believes that it is constrained the follow the latter line of cases.

mere allegations regarding the treatment of Covid-19 in prisons); *McNeilly v. Land*, 684 F.3d 611, 614 (6th Cir. 2012) (upholding denial of preliminary injunction when plaintiff made only a "small showing" of evidence); *United States v. Certain Land Situated in City of Detroit*, No. 95-1118, 1996 WL 26915, *1 n.1 (6th Cir. Jan. 23, 1996) (noting a lack of evidence to support speculative allegations).[7]

In conducting the preliminary-injunction analysis, the Court may rely on the entire record, including affidavits and hearsay materials that would not be admissible evidence to support a permanent injunction, if the evidence is appropriate given the character and objectives of the injunctive proceeding. *Sterling v. Deutsche Bank Nat'l Tr. Co.,* 368 F. Supp. 3d 723, 725 (S.D.N.Y. 2019); *Express Franchise Servs., L.P. v. Impact Outsourcing Sols., Inc.*, 244 F. Supp. 3d 1368, 1379 (N.D. Ga. 2017); *Action NC v. Strach*, 216 F. Supp. 3d 597, 629 (M.D.N.C. 2016) (explaining that district courts may look to, and indeed in appropriate circumstances rely on, hearsay or other inadmissible evidence when deciding whether a preliminary injunction is warranted). *See also Ohio State Conf. of N.A.A.C.P. v. Husted*, 768 F.3d 524, 535 (6th Cir. 2014), *vacated on other grounds*, No. 14-3877, 2014 WL 10384647 (6th Cir. Oct. 1, 2014).

## ANALYSIS

### I.    Public-Interest Provision

Plaintiffs challenge, on First Amendment grounds, the portion of Policy 1.404 that states that "[t]he Chairman or individual Board Member may recognize individuals not on the agenda for remarks to the Board if he/she determines that such is in the public interest." (Doc. No. 1 at ¶ 19). (The Court herein refers to this specific portion of Policy 1.404 as the "public-interest

---

[7] The Court keeps this principle in mind as to disputed factual assertions made by Plaintiff. The Court is aware, however, that many of the facts underlying the instant Motion are not in dispute.

provision."). As discussed further below, the Court construes the public-interest provision to allow individuals to speak (make remarks) if a board member determines that the remarks would *be regarding a matter of public interest* (as opposed to the remarks *advocating a particular viewpoint* that the board member finds "in the public interest" as, for example, because the board member happens to agree with the viewpoint). In this construction, what makes it "in the public interest" to allow an individual to speak is that the speaking would concern a matter of public interest.

"'Congress shall make no law,' the First Amendment says, 'abridging the freedom of speech.'" *Sisters for Life, Inc. v. Louisville-Jefferson Cnty.*, 56 F.4th 400, 403 (6th Cir. 2022) (quoting *Manhattan Cmty. Access Corp. v. Halleck*, U.S., 139 S. Ct. 1921, 1928 (2019)). "The Fourteenth Amendment limits state and local governments in the same manner." *Id.* "The Free Speech Clause limits the government's power to regulate speech on public property." *Am. Freedom Def. Initiative v. Suburban Mobility Auth.*, 978 F.3d 481, 485 (6th Cir. 2020). Those limits "var[y] depending on the forum where the speech occurs." *Ison v. Madison Local Sch. Dist. Bd. of Educ.*, 3 F.4th 887, 893 (6th Cir. 2021). A limited-public forum exists where the government opens its property "for certain groups or for the discussion of certain topics." *Id.* (quoting *Rosenberger v. Rector & Visitors of Univ. of Va.*, 515 U.S. 819, 829 (1995)). The public-comment period of a school board meeting is a limited-public forum. *See Lowery v. Jefferson Cnty. Bd. of Educ.*, 586 F.3d 427, 432 (6th Cir. 2009); *Perry Educ. Ass'n v. Perry Local Educators' Ass'n*, 460 U.S. 37, 45, n.7 (1983).

"In a limited public forum, the government may 'regulate features of speech unrelated to its content' through 'time, place, or manner' restrictions." *Ison*, 3 F.4th at 893 (citing *McCullen v. Coakley*, 573 U.S. 464, 477 (2014)). The government may also impose content-based restrictions, such as those reserving the forum for certain groups or for the discussion of certain topics, so long

as they "are reasonable in light of the purpose served by the forum and are viewpoint neutral." *Id*.

That means the government "must be able to articulate some sensible basis" for its rule. *Minn. Voters All. v. Mansky*, 138 S. Ct. 1876, 1888 (2018). And regardless of its rationale, the government cannot "disfavor[] certain points of view." *Ison*, 3 F.4th at 893 (quotation omitted).

The Court assumes arguendo[8] that the public-interest provision is a content-based limitation in that it regulates speech based on "the topic discussed or the idea or message expressed." *See Reed v. Town of Gilbert, Ariz*., 576 U.S. 155, 163 (2015). Accordingly, the Court must determine whether the public-interest provision is (1) "reasonable in light of the purpose served by the forum" and (2) viewpoint neutral. *Ison*, 3 F.4th at 893. Plaintiffs also argue that the public-interest provision violates the First Amendment because it imposes "an impermissible prior restraint." (Doc. No. 17 at 10). As discussed below, Plaintiffs are not likely to succeed on the merits with respect to the public-interest provision—which applies in a what is a limited public

---

[8] In *Youkhanna v. City of Sterling Heights,* the Sixth Circuit treated a requirement that public comments made at a city council meeting be "relevant" to the present agenda item as a content-based restriction. 934 F.3d 508, 518 (6th Cir. 2019). Accordingly, the Court finds that the public-interest provision, which is similar in that it requires that comments be in the "public interest," (which the Court takes to mean "relevant to," or "of public concern") would also be content-based. However, in a different case, *Lowery v. Jefferson Cnty. Bd. of Educ*., the Sixth Circuit treated a school board policy that prohibited comments that were "frivolous, repetitive, [or] harassing in nature" as content-neutral. 586 F.3d 427, 433 (6th Cir. 2009). According to the Sixth Circuit in *Lowery*, such a restriction was "'justifi[able] without reference to the content' of the speech, making it content-neutral on its face." *Id*. (citing *Clark v. Cmty. for Creative Non–Violence*, 468 U.S. 288, 293 (1984)). The Sixth Circuit went on to state that the justifications for the policy in *Lowery* (namely, "allow[ing] everyone a fair and adequate opportunity to be heard"; "assur[ing] that the regular agenda of the Board is completed"; and "recogniz[ing] the voluntary nature of the Board['s] time and us[ing] that time efficiently,") have "nothing to do with the subject of an individual's proposed speech and everything to do with conducting orderly, productive meetings." *Id*.

Here, a strong argument could be made that the public-interest provision is content-neutral for the same reasons that the *Lowery* court found the policy in that case to be content-neutral. However, since the Court concludes here that the public-interest provision is not unconstitutional even under the content-based standard (which is more favorable to Plaintiffs), the Court need not assess its constitutionality if it were instead to be categorized as content-neutral.

forum, as noted above—because it is reasonable, does not discriminate based on viewpoint, and is not a prior restraint.

A.     *The Public-Interest Provision Is Reasonable*

The public-interest provision is certainly reasonable in light of the purposes served by the forum. In *Youkhanna*, regarding a prior restraint requiring speech at a city council meeting to be relevant to the agenda, the Sixth Circuit court wrote "we can think of no content-based restriction more reasonable than asking that content be relevant." 934 F.3d at 519 (discussing a restriction that included "Speakers will be required to stay on point. Your comments during this agenda item must be related to this agenda item."). Similarly, the public-interest provision restricts comments to topics that concern the public at large, which are the only relevant purposes served by the forum at issue. The public-interest provision furthers an important government interest of maintaining structured, orderly Board meetings and avoiding waste of time and resources through lengthy discussions about personal or otherwise irrelevant topics. As the Sixth Circuit has previously stated, "[u]nstructured, chaotic school board meetings not only would be inefficient but also could deny other citizens the chance to make their voices heard. That is why public bodies may confine their meetings to specified subject matter." *Lowery*, 586 F.3d at 433 (internal citations omitted). It becomes even more apparent that the public-interest provision is reasonable when it is considered in light of the alternative avenues available for individuals to speak at a Board meeting. As the Court previously outlined, there are three methods by which an individual may appear at a Board meeting. (Doc. No. 1 at ¶ 16). First, an individual may be placed on the agenda by submitting, to the office of the Director of Schools ten business days before the scheduled Board meeting, a written request with descriptive materials about the proposed topic. (*Id*. at ¶ 17). Second, individuals can ask to speak about items already on the agenda by signing up or asking a

board member before the meeting starts. (*Id*. at ¶ 18). And third, any board member may recognize individuals not on the agenda to speak if he or she determines that the individual's remarks are in the public interest. (*Id*. at ¶ 19). The public-interest provision applies only to the third method, which already offers individuals the freedom to make remarks outside of the planned agenda. Accordingly, it is reasonable for the Board to maintain some discretion to limit speech made by individuals wishing to discuss non-agenda items via this third method.

C.       *The Public-Interest Provision Is Viewpoint-Neutral*

The public-interest provision is also viewpoint-neutral. "[T]he test for viewpoint discrimination is whether—within the relevant subject category—the government has singled out a subset of messages for disfavor based on the views expressed." *Matal v. Tam*, 582 U.S. 218, 248 (2017) (Kennedy, J., concurring) (citing *Cornelius v. NAACP Legal Defense & Ed. Fund, Inc.*, 473 U.S. 788, 806, (1985)). "The government must abstain from regulating speech when the specific motivating ideology or the opinion or perspective of the speaker is the rationale for the restriction." *Rosenberger,* 515 U.S. at 829. The public-interest provision does not suppress speech based on the Board's disfavor of particular views expressed by that speech. Rather, the public-interest provision provides a screening mechanism by which the Board may determine whether certain speech (namely, speech about a topic that does not appear on the agenda for the present Board meeting) is relevant to the purpose(s) of the meeting (meaning relevant to a matter, albeit not necessarily *any* matter,[9] concerning the public at large).

Put differently, the public-interest provision does not restrict individuals from sharing their views on a particular issue. Rather it limits the scope of topics that may be discussed at the current Board meeting (regardless of what views would be conveyed during a discussion on those topics)

---

[9] After all, the public matters to be addressed at a school board meeting naturally should be related in some way to public schools and not to issues such as, for example, U.S. foreign policy.

to those that are relevant to the public at large. So long as the speech in question is relevant to the general public, the public-interest provision does not discriminate based on views expressed in that speech, whatever those views happen to be. For example, an individual wishing to comment on a school's current standardized testing procedures (a topic that would conceivably fall within the "public interest") would be just as free to disparage those testing procedures as she would to endorse them. On the other hand, a father of a student seeking to discuss his child's individual performance on a school's standardized tests (a topic that would likely fall outside the "public interest") would not be allowed to speak at all on that topic, regardless of whether his comments indicate support or disdain for the school's standardized testing system.

Despite the above, Plaintiffs argue that the public-interest provision discriminates against speech based on viewpoint because (according to Plaintiffs) "[t]he general public's interest *is* a viewpoint," and "what the general public considers interesting or relevant might not match what a particular speaker considers interesting or relevant." (Doc. No. 22 at 7) (internal citations omitted). Based on this reasoning, Plaintiffs would presumably argue that prohibiting the father from speaking in the latter scenario of the example above constitutes viewpoint discrimination because the father may view his son's test scores as being a matter of public interest, even though the Board or the public may not. But this broad understanding of viewpoint discrimination is misguided. The Board's (hypothetical) decision to prohibit the father from speaking in the above example would not be an attempt by the Board to "single[] out a subset of messages for disfavor based on the views expressed." *Matal*, 582 U.S. at 248 (Kennedy, J., concurring). Nor would the Board's goal be to "to suppress unpopular ideas or information or manipulate the public debate through coercion rather than persuasion." *Turner Broad. Sys., Inc. v. F.C.C.*, 512 U.S. 622, 641 (1994). Rather, the Board's objectives in enforcing the public-interest provision would (presumably) be to confine the

topics of discussion that do not appear on the agenda to issues that concern the public at large.[10]

This "has nothing to do with the [viewpoint] of an individual's proposed speech and everything to do with conducting orderly, productive meetings." *Lowery*, 586 F.3d at 433.[11] Accordingly, the public-interest provision does not discriminate based on viewpoint.

Concededly, the public-interest provision is not artfully drafted, and it is not implausibly construed to give board members the prerogative to dub particular proposed remarks "in [or not in] the public interest" based on whether the board member agrees with the viewpoint reflected in those remarks. But as the Court has expressed above, a plausible reading is that an individual's remarks must be *about something of public interest.* The Court finds such a construction very plausible, not least because it contemplates a decision-making process for determining what is in the public interest—a simple determination of whether the topic concerns a matter of public rather than merely private interest—that is far more practical and time-efficient than the process Plaintiffs envision, whereby the board member (on the spot, at the meeting itself) would get into the weeds of what the speaker would say and whether the speaker's particular viewpoint would please the

---

[10] The Court reiterates that Policy 1.404 offers two other avenues by which individuals who wish to speak at a meeting may do so, neither of which are subject to the public-interest provision. These methods of circumventing the public-interest provision suggest to the Court that even if (contrary to the Court's conclusion herein) Plaintiffs were likely to succeed on the merits of this claim, Plaintiffs are not likely to suffer imminent, irreparable harm in the absence of a preliminary injunction prohibiting Defendants from enforcing the public-interest provision. Plaintiffs may still make their remarks via one of the two alternative methods offered by Policy 1.404 as noted above.

[11] The Court perceives that what Plaintiffs are doing here amounts to a form of bootstrapping. The argument seems to be that whenever a decision is made as to whether criteria (even viewpoint-neutral criteria) are satisfied for prohibiting speech on a particular topic, the decision itself represents a particular viewpoint (as to the satisfaction of those criteria). Under this argument, a policy allowing officials running a public meeting to apply viewpoint-neutral criteria for screening topics amounts to a policy that is not viewpoint-neutral. The Court rejects this notion. A content-neutral policy restricting speech based on particular criteria does not somehow become (or generate) a viewpoint-discriminatory policy merely because an official tasked with applying the policy must express a viewpoint as to whether those criteria are applicable in a particular case.

board member to the point where the board member would dub the speaking to be "in the public interest."

And if there are two plausible readings, one constitutional and the other not, courts generally adopt the reading that does not render the policy unconstitutional. *United States v. Palomar-Santiago*, 593 U.S. 321, 328-29 (2021) (internal citations omitted) ("Courts should indeed construe statutes to avoid not only the conclusion that [they are] unconstitutional, but also grave doubts upon that score."). Moreover, although the public-interest provision turns on whether the Chairman or an individual Board Member determines that certain speech is in the "public interest," the Court does not have to—and does not—read it as giving board members license to ignore objective considerations in deciding what is and is not in the public interest and to decide based on the board member's subjective assessment of the validity of the potential speaker's viewpoint.

In sum, the Court concludes that the public-interest provision is reasonable and does not discriminate based on viewpoint in a limited public forum.

C.      *The Public-Interest Provision is Not a Prior Restraint*

Plaintiffs also argue that the public-interest provision violates the First Amendment because it imposes "an impermissible prior restraint." (Doc. No. 17 at 10). "In its simple, most blatant form, a prior restraint is a law which requires submission of speech to an official who may grant or deny permission to utter or publish it based upon its contents." *Alexander v. United States*, 509 U.S. 544, 566 (1993) (Kennedy, J., dissenting). "Any system of prior restraint, . . . 'comes to this Court bearing a heavy presumption against its constitutional validity.'" *Se. Promotions, Ltd. v. Conrad*, 420 U.S. 546, 558 (1975) (quoting *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58, 70 (1963)).

Despite Plaintiffs' contentions, the Court here finds that the public-interest provision is not a prior restraint on speech. In *Lowery*, at issue was a school board policy that allowed citizens to apply and be approved to speak for five minutes at board meetings. *Id*. at 433. The policy further provided that "[t]he director of schools shall take appropriate steps to determine that appeals or appearances before the board are not frivolous, repetitive, nor harassing in nature," and it gave the chairman authority to "terminate the remarks of any individual who does not adhere to the above rules or chooses to be abusive to an individual board member or the Board as a whole." *Id*. Moreover, the policy gave the director and chairman the authority to decide whether to allow a particular individual to speak and the board the right to vote at the meeting to allow someone who has not gone through the screening process to speak at the meeting. *Id*. The plaintiffs called the defendants prior to a board meeting to apply for speaking time about a particular topic. *Id*. at 431. The defendants granted that request, and at the next board meeting, the plaintiffs' attorney spoke on the plaintiffs' behalf, criticizing various school officials. *Id*. About a month later, the plaintiffs called again, requesting speaking time on the same topic at the following board meeting. *Id*. This time, the defendants denied the plaintiff's request. *Id*. The plaintiffs then filed a lawsuit claiming that the school board violated their First Amendment rights by refusing to allow them to make a second appearance before the board. *Id*. The plaintiffs argued that denying their request ahead of time, rather than waiting to regulate the speech after hearing it, imposed a "prior restraint" on the speaker, subjecting the denial to more rigorous scrutiny and requiring more procedural safeguards. *Id*. at 433. The Sixth Circuit court rejected this argument, stating, "[i]t is true that the defendants 'restrained' the plaintiffs from speaking 'prior' to the meeting, but that does not make their actions a 'prior restraint' in a First Amendment sense." *Id*.

The *Lowery* court did not expound upon it's reasoning as to why the rule at issue did not constitute a "prior restraint." Perhaps it was because "[i]n practice, most prior restraints involve either an administrative rule requiring some form of license or permit before one may engage in expression, or a judicial order directing an individual not to engage in expression, on pain of contempt," none of which were required by the rule at issue in *Lowery*. *Griffin v. Bryant*, 30 F. Supp. 3d 1139, 1177 (D.N.M. 2014) (citing Rodney Smolla, Smolla and Nimmer on Freedom of Speech § 15:1 (2014)). Whatever the reason for the *Lowery* court's conclusion that the rule was not a prior restraint, the Court finds *Lowery* applicable here, given that its facts closely resemble those in this case. Policy 1.404 in this case allows an individual to ask any board member for permission to speak about a topic that is not on the agenda. Per the public-interest provision, a board member may deny that request if he or she determines that it is not "in the public interest," just as the defendants in *Lowery* could deny (and did so deny) an individual's request to speak about a topic that the defendants determined to be "frivolous, repetitive, []or harassing in nature." *Id*. at 433. Based on these similarities, the Court finds that it must apply *Lowery* and conclude that the public-interest provision does not constitute a prior restraint.

Because the public-interest provision is reasonable and does not discriminate based on viewpoint in a limited public forum, and because the public-interest provision is not a prior restraint, Plaintiffs are not likely to succeed on the merits and a preliminary injunction is not warranted regarding this rule. Accordingly, the Motion is denied with respect to the public-interest provision.

## II.     Address-Disclosure Requirement and Restriction Against "Abusive" Comments

Plaintiffs cannot show that they are likely to suffer imminent and irreparable harm in the absence of injunctive relief from the address-disclosure requirement and abusive-comment

prohibition.[12] Plaintiffs make several arguments about why the address-disclosure requirement and abusive-comment prohibition imposed by Defendants violates the First Amendment. (Doc. No. 17 at 17-21). Instead of responding to the merits of these arguments, Defendants assert that the issue is moot because Defendants have removed the address-disclosure requirement and "abusive" or "disruptive" comment restrictions from (1) the script that the Chairman reads aloud before the public comment portion of Board meetings (Doc. No. 21 at 4); (2) the sign-up form that individuals that wish to be added to the agenda for a Board's meeting to publicly address the Board are required to complete and submit to the Board (*id*. at 5); and (3) Board Policy 1.404 (Doc. No. 26 at 3). Plaintiffs argue in response that "voluntary cessation does not moot a case unless it is absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *West Virginia v. EPA*, 142 S. Ct. 2587, 2607 (2022) (cleaned up). Since (according to Plaintiffs) Defendants have not made this showing, their changes should not moot Plaintiffs' case with respect to the address-disclosure requirement and abusive-comment prohibition.

As Plaintiffs have acknowledged, Defendants have not moved to dismiss any of Plaintiffs' claims. (Doc. No. 22 at 4, n.1). "Instead, [Defendants] raised mootness only in response to [Plaintiffs'] motion for a preliminary injunction." (*Id*.). Accordingly, the Court need not assess at this time whether Plaintiffs' claims are moot in light of Defendants' voluntary cessation. Defendants' voluntary cessation is pertinent, however, to the Court's ruling on the instant Motion

---

[12] Defendants assert that they have removed, from the Board's pre-meeting script and sign-up form, language forbidding both "abusive" and "disruptive," comments. (Doc. Nos. 21 at 5-6). Defendants assert also that they have removed language forbidding "disruptive" comments from Policy 1.404 (as Policy 1.404 never contained language prohibiting "abusive" comments). (Doc. No. 26 at 3). To be clear, the Complaint requests that the Court enjoin Defendants from prohibiting speakers from making "abusive" comments only. (Doc. No. 1 at 29). Accordingly, the Court need only address the restrictions against "abusive" comments for purposes of the Motion, but notes that to the extent Plaintiffs lump the "abusive" and "disruptive" restrictions together, the Court's reasoning applies equally to Defendants' prior restrictions against "disruptive" comments.

because "[c]essation of the allegedly illegal conduct, though not rendering a claim moot, nevertheless may affect the ability to obtain injunctive relief, as by impacting the ability to show substantial and irreparable injury." *Milwaukee Police Ass'n v. Jones*, 192 F.3d 742, 748 (7th Cir. 1999) (citing *U.S. v. W.T. Grant*, 345 U.S. 629, 632-33 (1953)). *See also Speech First, Inc. v. Schlissel*, 939 F.3d 756, 770 (6th Cir. 2019) (finding the district court was incorrect in stating, in evaluating likelihood of success on the merits, that the case was moot due to government's cessation but leaving intact the district court's finding of no irreparable injury because of such cessation).

Here, the Court concludes that Plaintiffs are not likely to suffer imminent irreparable harm from the address-disclosure requirement or abusive/disruptive-comment restriction that Defendants have removed from their policies, given that those requirements are no longer included in any of the three documents described above (i.e., the sign-up form, pre-meeting script, or Policy 1.404). Accordingly, the Motion is denied with respect to the address-disclosure requirement and the abusive-comment prohibition.

## CONCLUSION

For the reasons set forth herein, the Motion (Doc. No. 16) is hereby DENIED.

IT IS SO ORDERED.

_Eli Richardson_
ELI RICHARDSON
UNITED STATES DISTRICT JUDGE